UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL ACTION NO. 25-CR-73-GFVT-MAS

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.                                   PLEA AGREEMENT

QUINCINO LAMONT WAIDE, JR.                                                   DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the sole count of the Indictment charging a violation of 18 U.S.C. § 922(g)(9), possession of a firearm by an individual with a conviction for a misdemeanor crime of domestic violence. The Defendant also agrees to forfeiture of the firearms and ammunition as set forth in the Forfeiture Allegation.

2. The essential elements of the sole count of the Indictment are as follows:

   (a) The defendant knowingly possessed a firearm or ammunition;

   (b) At the time of the charged act, the defendant had previously been convicted in a court of a misdemeanor under state law that has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, and had committed that crime against a person with whom he shares a child in common;

   (c) At the time of the charged act, the defendant knew that he had been convicted of such an offense; and

1

(d) Such possession was in or affecting commerce, or the firearm / ammunition had been transported in interstate or foreign commerce.

3. As to the sole count of the Indictment, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On April 24, 2025, Lexington Police Department ("LPD") with the assistance of Richmond Police Department ("RPD") sought to serve a search warrant for the cell phone of Quincino Waide, Jr. ("Waide" or "Defendant") relating to Waide's suspected involvement in a shooting in October 2024 ("the October 2024 shooting") and a homicide that occurred in September 2023. LPD and RPD encountered Waide outside of his residence, an apartment located on Willow Drive in Richmond, Kentucky. An RPD detective approached Waide and announced himself, prompting Waide to flee inside of his apartment. When Waide fled, he reached for his waistband and appeared to be holding something heavy as he ran, consistent with someone carrying a firearm. Law enforcement attempted to call out the occupants of the residence. Waide and his girlfriend exited the residence after approximately twenty-five minutes. When law enforcement later searched the residence, they located a Glock 21 firearm, Winchester 9mm ammunition, Sig Sauer .45 caliber ammunition, a magazine containing Ammo, Inc. .40 caliber ammunition, and Hornady .45 caliber ammunition. The firearm had been hidden in a floor-level HVAC vent in one of the children's bedrooms. The ammunition was located throughout the residence. Law enforcement also located Waide's phone, which had been factory reset.

(b) Trace on the Glock 21 revealed that Waide's girlfriend purchased the weapon on August 11, 2022—one day after Waide's birthday. Waide was not a prohibited person under 18 U.S.C. § 922(g)(9) at that time but he was under felony indictment. The Glock 21, Winchester ammunition, Ammo, Inc. ammunition, and Hornady ammunition were each manufactured outside of the Commonwealth of Kentucky.

(c) The National Integrated Ballistic Information Network ("NIBIN") is a ballistic imaging technology system utilized by both local law enforcement

2

and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Law enforcement utilizes NIBIN to generate information regarding potential ballistic matches for collected spent shell casings. The Glock 21 from Waide's apartment yielded a NIBIN lead to the October 2024 shooting that, in part, formed the basis for the warrant for Waide's phone. On October 26, 2024, at approximately 1610, LPD received multiple calls for shots fired between two vehicles in the area of Palumbo Drive and Old Todd's Road as well as Patchen Drive. Civilian dash camera showed, and witnesses also reported, that a silver Lexus sedan ("Lexus") stopped behind a dark-colored Chevrolet Cruze ("Cruze") at a stoplight and, thereafter, the Lexus's occupants exited their vehicle and began shooting at the Cruze. The Cruze drove off, but the silver car continued to pursue it. The Cruze eventually evaded the Lexus. However, damage from the gunfire eventually disabled the Cruze, prompting its occupant to flee the vehicle. A witness saw a single Black male matching Waide's description abandon the Cruze. Law enforcement observed bullet holes in the Cruze. Law enforcement later learned that the Cruze was registered to Waide's aunt, who has registered in her name other vehicles for Waide over the last several years (including the vehicle parked outside of Waide's residence on April 24, 2025). Within the Cruze and along the crime scene, law enforcement located spent shell casings. Law enforcement also found in the Cruze medical paperwork and employment paperwork with Waide's name on it. The medical paperwork appeared to be historical, referencing appointments since October 8, 2024, but the employment paperwork was forward-looking, telling Waide to report to a certain location on November 4th. Law enforcement located a work badge from that employer in Waide's apartment in April 2025.

(d) In both Fall 2024 and April 2025, Waide had a conviction for a misdemeanor crime of domestic violence stemming from a violent assault upon his ex-girlfriend, the mother of two of his children, in February 2022. Investigative reports indicate the Waide struck, pushed, and strangled the victim. On November 18, 2022, Waide pleaded guilty to three charges, including Assault, 4th Degree, Minor Injury (KRS 508.030), in Fayette Circuit Court (Case No. 22-CR-550). On December 2, 2022, Waide was adjudged guilty of "Assault, 4th Degree, Domestic Violence…" On April 24, 2023, Waide received a sentence of twelve months (suspended) and two years' probation for his conviction on the aforementioned charge.

3

 (e) Waide admits that he knew that he had a conviction for a misdemeanor crime of domestic violence and, following that conviction, he knowingly possessed a firearm and ammunition that had moved in interstate commerce.

4. The statutory punishment for the sole count of the Indictment is not more than 15 years imprisonment, not more than a $250,000 fine, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

 (a) The United States Sentencing Guidelines ("USSG") in effect as of November 1, 2024, will determine the Defendant's guidelines range.

 (b) Pursuant to USSG § 1B1.3, the Defendant's relevant conduct includes the facts set forth in paragraph 3 and the provided discovery materials.

 (c) Pursuant to USSG § 2K2.1(a)(7), the base offense level is 12.

 (d) Pursuant to USSG. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to USSG Chapter 4. Further, no agreement exists as to the application of USSG § 3C1.1, relating to obstruction of justice.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable

defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly,

6

individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this

prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

                                                  PAUL C. McCAFFREY
                                                  ACTING UNITED STATES ATTORNEY

Date: 9/8/25     By: _____
                     Mary Melton
                     Assistant United States Attorney

Date: 9/5/25         _____
                     Quincino Lamont Waide, Jr.
                     Defendant

Date: 9/5/25         _____
                     Whitney True Lawson
                     Attorney for Defendant

9